UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC., as
Broadcast Licensee of the December 3, 2005
TAYLOR/HOPKINS II Program

                         Plaintiff,

        - v -

JUSNA INC., d/b/a UPPER CUTS a/k/a
UPPERCUTS,

                         Defendant.
-----------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV 06-1379 (DLI)(VVP)

**POHORELSKY, U.S. Magistrate Judge:**

       This matter was referred to me by the Honorable Dora L. Irizarry for a report and recommendation regarding the amount of damages to be awarded to the plaintiff as against the defaulting defendant Jusna, Inc., (hereafter "Jusna") doing business as Upper Cuts, and also known as Uppercuts. This case involves the defendant's unauthorized interception, reception and publication of the plaintiff's closed-circuit telecast of the Taylor/Hopkins II televison boxing match (hereafter "the program") on December 3, 2005 without the prepayment of the required sublicense fee.

    *1.*    *Liability*

       Although the plaintiff asserts claims under two statutes prohibiting the conduct complained of here – 47 U.S.C. § 553 and 47 U.S.C. § 605 – they are required to elect between the two with respect to the damages they seek. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Ramirez*, No. 05 Civ. 10283, 2006 WL 2714703, at *3 (S.D.N.Y. Sept. 21, 2006), citing *Time Warner Cable of New York City v. Barbosa*, No. 98 Civ. 3522, 2001 WL 118608, at *5 (S.D.N.Y. Jan. 2, 2001) and *Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.*, No.

88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991). As the plaintiff has elected to recover under 47 U.S.C. § 605, the court will assess liability under that statute only.

Section 605(a) provides, in pertinent part, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Liability for a violation of section 605(a) occurs even if the communication is intercepted without authorization from a cable or other closed circuit transmissions system, as long as the communication had been transmitted by radio at some point prior to its interception from the cable system. *See International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 132-33 (2nd Cir. 1996).

Given the default, the well-pleaded allegations of the Complaint against the defendant are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court accepts as true the assertions that the defendant willfully intercepted and received the interstate communication of the program, which originated as a satellite signal and was thereafter transmitted via cable networks. *See* Complaint ¶¶ 14-19. The court also accepts as fact that after intercepting the program, the defendant published the event to its patrons without obtaining from the plaintiff the contractual right to do so and for the purpose of securing financial gain and commercial advantage. *Id.* ¶¶ 18-20, 32. Because the program originated as a satellite signal, *see* Complaint ¶ 15, the signal was a radio transmission within the meaning of section 605. *Int'l Cablevision, Inc. v. Sykes*, 97 F. 2d 998, 1008 (2d Cir. 1993) (quoting 130 Cong. Rec. 31,874,

*reprinted in* 1984 U.S.C.C.A.N. 4746). Therefore, the facts pleaded in the Complaint are sufficient to establish the defendant's liability for violating the statute.

### 2. *Damages*

The plaintiff has elected to seek an award of statutory damages against the defendant under 47 U.S.C. § 605(e)(3)(C).[1] The applicable subsections permit a statutory damages award "as the court considers just," between a range of $1,000 to $100,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a) if committed willfully and for purposes of financial gain. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II), (ii). The plaintiff also seeks recovery of costs, which is mandated by 47 U.S.C. § 605(e)(3)(B)(iii).

The court received affidavits in lieu of holding an evidentiary hearing on these issues. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993). As no party has objected to that procedure, the court has considered the affidavits submitted by the plaintiff, and concludes that they provide a basis for awarding the damages recommended below.

In setting the amount of statutory damages within the applicable range under section 605(e)(3)(C), the court ordinarily considers first the revenue lost from the defendant's failure to make the necessary sublicense fee payment. A licensing agreement attached to an affidavit

---

[1] The statute permits a plaintiff to elect between statutory damages and actual damages.

submitted by the plaintiff's president reveals that the plaintiff charges establishments that have an occupancy of 500 or less a licensing fee to display the plaintiff's programming, but the agreement does not reveal the amount charged or how the fee is calculated. *See* Plaintiff's Affidavit for Default (hereinafter "Gagliardi Aff.") ¶ 3, Ex. A. Thus, although an affidavit by an investigator hired by the plaintiff attests that the occupancy of the defendant's establishment was approximately ten (10), *id.* ¶ 7, Ex. C, and therefore establishes that the plaintiff would have charged the defendant a licensing fee, the court has no basis to determine what that fee would have been.

Other courts in this district have quantified a plaintiff's damages in similar circumstances by multiplying the number of patrons in the defendant's establishment during the event by $50. The investigator entered Jusna on December 3, 2005 at approximately 11:54 p.m. and observed that there were approximately ten patrons present in the defendant's establishment during the unlawful publication of the program. *Id.* ¶ 7, Ex. C. Using that formula here yields a total of $500 (10 patrons times $50). *See, e.g., Entertainment By J & J, Inc. v. Mama Zee Restaurant 7 Catering Services, Inc.,* No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (citing *Time Warner Cable v. Taco Rapido Restaurant,* 988 F. Supp. 107, 111 (E.D.N.Y. 1997)). To insure that the award will act as a deterrent to such conduct by the defendant in the future, the court recommends an award of three times that amount. The court has considered recommending a higher amount, but given the nature of the defendant's business – a hair salon – and the modest size of the business, an award of $1,500, coupled with the award of costs below, should be sufficient to accomplish a deterrent purpose. Obviously, if piracy at this location should recur, a more substantial award would be in order in the future.

### 3. *Costs*

Section 605(e) mandates that a prevailing plaintiff shall recover full costs including reasonable attorney's fees. 42 U.S.C. § 605(e)(3)(B)(iii). The plaintiff submitted an affidavit establishing that it incurred $250 in filing fees and $100 in service of process fees in prosecuting this action, which are properly reimbursable. *See* Attorney's Affidavit of Costs and Fees (hereinafter "Lonstein Aff."). Accordingly, the court recommends that the plaintiff be awarded $350 for costs.

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that the plaintiff be awarded statutory damages in the amount of $1,500, and costs in the amount of $350 against the defendant Jusna, Inc.

\*       \*       \*       \*       \*       \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
March 28, 2008